**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SHERRI L. DAVIS, Individually and on** | § | |
| **Behalf of All Others Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **THE MOSTYN LAW FIRM, P.C.** | § | **CIVIL ACTION NO. 4:11-cv-02874** |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR**
**EXPEDITED CLASS NOTICE AND FOR LIMITED DISCOVERY**

Respectfully submitted,

*/s/ Will Stukenberg*
William R. Stukenberg
Attorney-in-Charge
State Bar No. 24051397
Federal I.D. No. 55792
wstukenberg@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

Of Counsel:

Peter J. Stuhldreher
State Bar No. 24056393
Federal I.D. No. 699821
pstuhldreher@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

**ATTORNEYS FOR DEFENDANT**
**THE MOSTYN LAW FIRM, P.C.**

## TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ................................................................... 1

II.   NATURE & STAGE OF PROCEEDING ......................................................... 2

III.  ISSUES TO BE RULED ON BY THE COURT AND STANDARD OF REVIEW ... 3

IV.   BACKGROUND FACTS ................................................................................ 3

    A. Defendant's Business And The Docket Departments Of The Firm ....................................... 3

    B. Defendant Employs Different Types Of Paralegals Who Have Significant
       Variations In Job Duties And Reporting Structures .................................................. 5

    C. The Method Of Compensation And Work Hours Varies Among Paralegals ...................... 9

V.    ARGUMENTS AND AUTHORITIES ............................................................ 9

    A. Plaintiffs Bear The Burden To Establish Certification Is Warranted .................................. 9

    B. Plaintiffs Fail To Prove That The Putative Class Members Are
       Similarly-Situated As Each Putative Class Member's Exempt Status
       Requires A Highly Individualized Inquiry ............................................................ 12

        1.  Plaintiffs' declarations are unreliable and fail to carry their burden
            to establish that a putative class of similarly-situated individuals exists.............. 12

        2.  No class of similarly-situated individuals exists because highly
            individualized fact-specific inquiries are required to determine
            whether each member of the putative class is exempt. .......................................... 14

        3.  Plaintiffs' proposed class cannot be similarly-situated because many
            members of the proposed class were, at all times, classified as non-exempt ....... 18

    C. Plaintiffs Have Failed To Identify A Common Policy That Violates The FLSA .............. 19

    D. Plaintiffs Have Not Established That Potential Class Members Desire To
       Opt-In To The Proposed Collective Action ........................................................ 20

    E. Alternatively, The Scope Of Plaintiffs' Proposed Class, Notice Procedures
       And Form Of Notice Must Be Modified ............................................................ 21

        1.  The class to which Plaintiffs request notice be sent is defective
            because it impermissibly seeks to expand the class which Plaintiffs
            purport to represent ........................................................................ 21

2. The putative class should be limited to Salaried Supervisor Paralegals in Defendant's Houston office. ............................................................................... 22

3. The notice period and putative class should be limited to two years prior to any order granting notice ........................................................................ 23

4. The proposed notice requires substantial revision to provide objective and neutral notice. ...................................................................................... 24

5. The scope of the requested discovery should be limited ...................................... 25

**VI.    CONCLUSION** ................................................................................................. **25**

# TABLE OF AUTHORITIES

**CASES**

*Aguirre v. SBC Communications, Inc.*, No. H-05-3198,
2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006) ................................ 3, 10, 15, 16

*Aguirre v. SBC Communications, Inc.*, No. H-05-3198,
2007 U.S. Dist. LEXIS 17259 (S.D. Tex. Mar. 12, 2007) ................................................ 10

*Austin v. CUNA Mutual Ins. Society*,
240 F.R.D. 420 (W.D. Wisc. 2006) ................................................................................... 15

*Badgett v. Texas Taco Cabana, L.P.*, No. H-05-3624,
2006 U.S. Dist. LEXIS 74530 (S.D. Tex. Oct. 12, 2006)............................................... 9, 10

*Barron v. Henry County Sch. Sys.*,
242 F. Supp. 2d 1096 (M.D. Ala. 2003) ........................................................................... 24

*Clark v. City of Fort Worth,* No. 4:10-CV-519-A,
2011 U.S. Dist. LEXIS 3082 (N.D. Tex. Jan. 11, 2011) .................................................. 13

*Cohen v. Allied Steel Buildings, Inc.*,
554 F.Supp.2d 1331 (S.D. Fla. 2008) ............................................................................... 23

*Colson v. Avnet, Inc.*, No. 09-603-PHX-MHM,
2010 U.S. Dist. LEXIS 12620 (D. Ariz. Jan. 27, 2010) .................................................. 20

*Cruz v. Dollar Tree Stores, Inc.*, No. 07-04012,
2011 U.S. Dist. LEXIS 73938 (N.D. Cal. July 8, 2011).................................................... 18

*Davis v. Charoen Pokphand (USA), Inc.*,
303 F.Supp.2d 1272, 1277 (M.D. Ala. 2004) ................................................................... 21

*Detho v. Bilal*, No. H-07-2160,
2008 U.S. Dist. LEXIS 29502 (S.D. Tex. Apr. 10, 2008) ................................................ 21

*Diaz v. Elec. Boutique of Am., Inc.*, No. 04-CV-0840E(Sr),
2005 U.S. Dist. LEXIS (W.D.N.Y. Oct. 17, 2005)...................................................... 11, 19

*Foraker v. Highpoint Southwest, Servs. L.P.*, No. H-06-1856,
2006 U.S. Dist. LEXIS 63951 (S.D. Tex. Sept. 7, 2006) ................................................. 24

*Freeman v. Wal-Mart Stores, Inc.*,
256 F.Supp.2d 941 (W.D. Ark. 2003)......................................................................... 10, 11

*Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762-Orl-28JGG,
2007 U.S. Dist. LEXIS 26160 (M.D. Fla. Apr. 9, 2007)................................................... 22

*Harris v. Healthcare Serv. Group, Inc.*, No. 06-2903,
    2007 U.S. Dist. LEXIS 55221 (E.D. Pa. Jul. 31, 2007)..................................................... 24

*Hinojos v. Home Depot, Inc.*, No. 2:06-CV-00108,
    2006 U.S. Dist. LEXIS 95434 (D. Nev. Dec. 1, 2006)..................................................... 19

*Hoffman-LaRoche, Inc. v. Sperling*,
    493 U.S. 165, 170 (1989)................................................................................................. 10

*Holt v. Rite Aid Corp.*,
    333 F.Supp.2d 1265 (M.D. Ala. 2004) ..................................................................... 11, 14

*Humphries v. Stream Int'l, Inc.*, No. 3:03-CV-1682-D,
    2004 U.S. Dist. LEXIS 20465 (N.D. Tex. Feb. 13, 2004)............................................... 25

*Jackson v. City of San Antonio*,
    220 F.R.D. 55 (W.D. Tex. 2003) ..................................................................................... 24

*Kreher v. City of Atlanta*, 1:04-cv-2651-WSD,
    2006 U.S. Dist. LEXIS 23094 (N.D. Ga. Mar. 20, 2006)............................................... 24

*Lentz v. Spanky's Restaurant II, Inc.*,
    491 F.Supp.2d 663 (N.D. Tex. 2007) ....................................................................... 11, 20

*McKinzie v. Westlake Hardware, Inc.*, No. 09-0796-CV-W-FJG,
    2010 U.S. Dist. LEXIS 58078 (W.D. Mo. June 11, 2010) ............................................. 24

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988)......................................................................................................... 23

*Mike v. Safeco Ins. Co. of Am.*,
    274 F.Supp.2d 216 (D. Conn. 2003)..................................................................... 11, 14, 19

*Morales v. Thang Hung Corp.*, No. 4:08-2795,
    2009 U.S. Dist. LEXIS 71765 (S.D. Tex. Aug. 14, 2009)............................................... 13

*Muhammad v. GBJ, Inc.*, No. H-10-2816,
    2011 U.S. Dist. LEXIS 23589 (S.D. Tex., Mar. 9, 2011)......................................... 23, 24

*Odem v. Centex Homes*, No. 3:08-CV-1196-L,
    2010 WL 424216 (N.D. Tex. Feb. 4, 2010)................................................................... 18

*Parker v. Rowland Express, Inc.*,
    492 F.Supp.2d 1159 (D. Minn. 2007)............................................................................ 20

*Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965,
    2005 U.S. Dist. LEXIS 34033 ......................................................................................... 24

*Rainey v. McWane, Inc.*,
    314 Fed. Appx. 693 (5th Cir. 2009) ............................................... 15

*Reich v. Homier Distributing Co., Inc.*,
    362 F.Supp.2d 1009 (N.D. Ind. 2005) ........................................... 15

*Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-CV-770-T-27MSS,
    2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 23, 2006) ..................... 20, 21

*Ruiz v. Serco, Inc.,* No. 10-cv-394-bbc,
    2011 U.S. Dist. LEXIS 91215 (W.D. Wis. Aug. 5, 2011) ..................... 11, 17

*Simmons v. T-Mobile USA, Inc.,* No. H-06-1820,
    2007 U.S. Dist. LEXIS 5002 (S.D. Tex. Jan. 24, 2007) ..................... 20

*Songer v. Dillon Res., Inc.*,
    569 F.Supp.2d 703 (N.D. Tex. 2008) ........................................... 11, 12, 19

*Stiles v. FFE Transp. Servs.,* No. 3:09-CV-1535-B,
    2010 U.S. Dist. LEXIS 24250 (N.D. Tex. Mar. 15, 2010) ................... 13

*Trinh v. J.P. Morgan Chase & Co.*, No. 07-CV-1666 W (WMC),
    2008 U.S. Dist. LEXIS 33016 (S.D. Cal. Apr. 22, 2008) ................... 19

*Updite v. Delta Beverage Group, Inc.*, No. CIV A 06-0593,
    2006 U.S. Dist. LEXIS 90719 (W.D. La. Dec. 15, 2006) ................... 22

*Villanueva-Bazaldua v. TruGreen Ltd. Partners*,
    479 F.Supp.2d 411 (D. Del. 2007) ............................................... 11

*Vogt v. Tex. Instruments, Inc.*, No. 3:05-CV-2244-L,
    2006 U.S. Dist. LEXIS 67226 (N.D. Tex. Sept. 19, 2006) ................. 25

*Wal-Mart Stores, Inc. v. Dukes*,
    __ U.S. __, 131 S.Ct. 1541 (2011) ..................................... 2, 11, 12, 16, 17, 18

*Williams v. Long*,
    585 F.Supp.2d 679 (D. Md. 2008) ............................................... 24

*Wlotkowski v. Michigan Bell Telephone Co.*,
    267 F.R.D. 213 (E.D. Mich. 2010) ............................................... 24

*Wombles v. Title Max of Ala., Inc.*, No. 3:03-cv-1158-C (WO),
    2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005) ................... 15

**STATUTES**

29 C.F.R. § 541.100(a) ............................................................................. 15

29 C.F.R. § 541.200(a) ............................................................................. 15

29 C.F.R. § 541.300 ................................................................................. 16

29 C.F.R. 541.301(e)(7) ........................................................................... 16

29 C.F.R. 541.601(c) ............................................................................... 15

29 C.F.R. 541.708 ....................................................................................15

29 U.S.C. § 216(b) ........................................................................... 3, 9, 11

29 U.S.C. § 255(a) ...................................................................................23

Defendant The Mostyn Law Firm, P.C. ("Mostyn" or "Defendant") files this Response to Plaintiffs Sherri Davis ("Davis") and Carlos Alvarado's ("Alvarado") (collectively "Plaintiffs") Motion for Expedited Class Notice ("Motion"), and in support thereof shows as follows:

## I.      SUMMARY OF THE ARGUMENT

In this collective action, Plaintiffs seek to conditionally certify a class of all paralegal employees of Defendant who were allegedly denied overtime in violation of the Fair Labor Standards Act ("FLSA") during the past three years.  To do so, Plaintiffs bear the burden of proving that (1) they are similarly situated to the members of the putative class, (2) members of the putative class were subjected to a single decision, policy, or plan that violates the FLSA; and (3) other members of the putative class desire to opt-in to the lawsuit.

In support of their Motion, Plaintiffs offer nothing more than their own conclusory and virtually identical two page declarations, which contain all of one identical sentence regarding their job duties.  And more importantly, Alvarado admitted at his deposition that his one sentence description of his job duties in his declaration was false.  Moreover, neither Plaintiff has worked for Defendant in at least seventeen months, and both admit that they have no knowledge of Defendant's operations since they left (and never had knowledge of paralegals outside of Houston), which renders any assertion that Plaintiffs have met their burden to establish that they are similarly situated to any other paralegals spurious.  Similarly, Plaintiffs admit that the only decision, policy, or plan to which they were purportedly subjected was their classification as exempt, and settled law provides that mere classification as exempt is insufficient to carry their burden.  Moreover, Plaintiffs fail to even assert that other members of the putative class desire to opt-in to this case, completely ignoring this requirement.  Based on the record before the Court, Plaintiffs have failed to carry their burden with respect to any of the requirements – let alone all three – and the Motion should be denied.

Independent of the dispositive flaws in the evidence offered by Plaintiffs, the facts make clear that Plaintiffs are not similarly situated to the putative class.   Defendant employs Supervisor Paralegals, Lead Paralegals, and Docket Paralegals, and the job duties between any given paralegal varies widely.   Some paralegals supervise other paralegals and support staff and some do not; some are paid salary and others are paid hourly with overtime; some earn over $100,000 and others do not; some are involved in disciplinary matters and others are not; and some participate in hiring and firing decisions and others do not.   Because of the significant discrepancies in job duties, responsibilities, classification, and reporting structure among paralegals, the putative class is not similarly situated as a matter of law and the Motion fails.

Moreover, at least **five** different exemptions may apply to any given paralegal.   Also, the hours worked by any given paralegal differ greatly week to week and paralegal to paralegal.   As a result, allowing this matter to proceed as a collective action would require that the Parties present evidence and a jury resolve a multitude of individualized inquiries regarding who was exempt during what time periods under at least five different exemptions, how many hours were worked by each class member in every week during a three year period, and what each class member's damages should be.   Such an unruly class and the resulting confusion renders litigating this matter as a collective action unworkable.   Fairness, procedural expediency, and the Due Process concerns articulated by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 1541 (2011) require that the Motion be denied.

## II.  NATURE & STAGE OF PROCEEDING

Plaintiffs filed their Original Complaint on August 3, 2011, asserting that they and alleged similarly-situated individuals were improperly classified as exempt under the FLSA by Defendant and denied overtime pay.   Defendant timely answered and Plaintiffs moved for conditional certification on October 24, 2011.   The Parties conducted limited discovery on the

2

issue of conditional certification, including the exchange of written discovery and the depositions of Plaintiffs.  Defendant files this Response within ten days of the completion of limited discovery as ordered by the Court, and the Motion is ripe for consideration.

### III.    ISSUES TO BE RULED ON BY THE COURT AND STANDARD OF REVIEW

The issue before the Court is whether Plaintiffs have met their burden to conditionally certify and issue notice to a putative class of all paralegals employed by Defendant in the last three years under 29 U.S.C. § 216(b).  Plaintiffs bear the burden to establish that (1) they are similarly situated to the members of the putative class, (2) members of the putative class "were together the victims of a single decision, policy, or plan" that violates the FLSA; and (3) members of the putative class desire to opt-in to the lawsuit, and the Court enjoys wide discretion in determining if Plaintiffs have met this burden.  *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, *23-24 (S.D. Tex. Apr. 11, 2006).

### IV.    BACKGROUND FACTS

#### A.    Defendant's Business And The Docket Departments Of The Firm

Defendant is a litigation law firm based in Houston with additional offices in Galveston, Beaumont, and Austin .[1]  Within Houston, Defendant has two offices: the Westcott office and the West Alabama office.[2]  Each office largely operates independently and there is little overlap between the offices.[3]  For example, paralegals report to the same location daily, and paralegals at the Westcott office rarely, if ever, work with paralegals or attorneys at the West Alabama office, let alone those in Galveston, Beaumont, or Austin.[4]

---

[1] Declaration of Vivian Anderson, Exhibit 1, at ¶ 3.  Deposition of Carlos Alvarado, Exhibit 2, at 30:20-24.  At the time Davis worked for Defendant, Defendant did not have a Galveston office.  Deposition of Sherri Davis, Exhibit 3, at 22:12-24:3.

[2] Anderson Decl., Ex. 1, at ¶ 4.  Alvarado Dep., Ex. 2, at 31:23-32:10.  At the time of Davis' employment, Defendant only had its office on Westcott.  Davis Dep., Ex. 3, at 22:20-23:2.

[3] Anderson Decl., Ex. 1, at ¶ 4.

[4] Anderson Decl., Ex. 1, at ¶¶ 4-5.  Alvarado Dep., Ex. 2, at 31:3-22; 33:11-34:3.  Davis Dep., Ex. 3, at 24:9-16.

In Houston, Defendant organizes its cases and workforce into approximately seven distinct dockets.[5] The dockets vary considerably, with some dockets having as few as two hundred cases and others having as many as 2,600.[6] Each docket is comprised of different types of cases, including Hurricane Ike litigation, intellectual property, medical malpractice, and personal injury cases.[7]

A lead docket attorney is ultimately responsible for all cases on a given docket, and several associate attorneys are also assigned to the docket.[8] One Lead Paralegal is assigned to the docket and is responsible for overseeing the paralegal and administrative functions of the docket, and several Docket Paralegals who report to the Lead Paralegal are also assigned to the docket.[9] Also assigned to each docket and reporting to the Lead Paralegal are one or more legal assistants, one or more legal secretaries, and at least one file clerk.[10] Once assigned to a docket, employees work virtually exclusively on that docket.[11] Through this docket structure, the paralegals assigned to each docket function as separate departments within the firm.[12]

While the basic structure of staffing on each docket is the same, the actual number of employees assigned to each docket is different depending on the size, complexity, and needs of the docket.[13] Not surprisingly, no two dockets are the same and there is substantial variation in terms of the work duties, job tasks, work hours, reporting structure, and responsibilities between the dockets depending on the type and number of cases comprising the docket as well as who

---

[5] Anderson Decl., Ex. 1, at ¶ 6.  Alvarado Dep., Ex. 2, at 34:4-18.
[6] Anderson Decl., Ex. 1, at ¶ 6.  Alvarado Dep., Ex. 2, at 34:19-22.
[7] Anderson Decl., Ex. 1, at ¶ 7.  Alvarado Dep., Ex. 2, at 34:23-35:15.
[8] Anderson Decl., Ex. 1, at ¶ 8.  Alvarado Dep., Ex. 2, at 34:19-22.
[9] Anderson Decl., Ex. 1, at ¶¶ 8, 12.  Alvarado Dep., Ex. 2, at 35:24-36:20.
[10] Anderson Decl., Ex. 1, at ¶ 8.  Alvarado Dep., Ex. 2, at 38:14-22.
[11] Anderson Decl., Ex. 1, at ¶ 8.  Alvarado Dep., Ex. 2, at 38:23-39:12.
[12] Anderson Decl., Ex. 1, at ¶ 9.
[13] Anderson Decl., Ex. 1, at ¶ 10.  *See also* Alvarado Dep., Ex. 2, at 36:5-20, 38:14-22.

else is assigned to that particular docket.[14]   For example, the degree of responsibility, amount of discretion, and types of tasks a Lead Paralegal or Docket Paralegal performs will vary widely based on the type of paralegal, the preferences of the attorney, the demands of the docket, the experience and competence of the paralegal, and the type of cases on the docket.[15]

Defendant has various departments that provide support to all dockets and enable each docket to function as an integrated team, including accounting, human resources, and intake departments.[16]   Defendant also has a file department that is charged with creating and maintaining paper and electronic files for all cases from all dockets.[17]   Defendant has a mail department that is responsible for all mail as well as copy services, and runners who assist with deliveries and similar tasks around the office as well receptionists to answer phones.[18]   Paralegals are not responsible for copying, filing, typing, answering phones, and similar tasks that are performed by these support departments.[19]

**B.    Defendant Employs Different Types Of Paralegals Who Have Significant Variations In Job Duties And Reporting Structures**

Each docket has one Lead Paralegal, who is responsible for overseeing the paralegal and administrative function of the docket.[20]   The Docket Paralegals (generally one to three) and support staff (generally three to five) assigned to the docket report directly to the Lead Paralegal, who is their supervisor.[21]   The Lead Paralegal in turn reports to the lead docket attorney and Supervisor Paralegal.[22]   All work assignments from the attorneys on the docket go through the Lead Paralegal, who then exercises discretion and decides to which Docket Paralegal or support

---

[14] Anderson Decl., Ex. 1, at ¶ 11.
[15] Anderson Decl., Ex. 1, at ¶ 11.  Alvarado Dep., Ex. 2, at 66:15-67:2, 67:15-17.
[16] Anderson Decl., Ex. 1, at ¶ 29.  Alvarado Dep., Ex. 2, at 39:13-41:6.
[17] Anderson Decl., Ex. 1, at ¶ 29.  Alvarado Dep., Ex. 2, at 37:1-20.
[18] Anderson Decl., Ex. 1, at ¶ 29.  Alvarado Dep., Ex. 2, at 39:13-40:20.
[19] Anderson Decl., Ex. 1, at ¶ 30.  *See also* Alvarado Dep., Ex. 2, at 60:23-61:10.
[20] Anderson Decl., Ex. 1, at ¶ 12.
[21] Anderson Decl., Ex. 1, at ¶ 12.
[22] Anderson Decl., Ex. 1, at ¶ 12.

staff member to assign that particular project.[23]   The Lead Paralegal often reviews the assignments of Docket Paralegals and support staff on their docket to ensure that the projects have been properly performed.[24]   If a project is done incorrectly, the attorneys will bring the concern to the Lead Paralegal, who is then charged with ensuring any errors are corrected and disciplining his or her direct reports, as warranted.[25]   The Lead Paralegal is responsible for being aware of the status of all projects being performed by his or her subordinates, and is ultimately responsible for ensuring that his or her direct reports are properly performing their jobs.[26]

The Lead Paralegal also interviews paralegal candidates who are intended to be assigned to that Lead Paralegal's docket, and the Lead Paralegal's feedback on candidates is given substantial weight by the human resources manager and Supervisor Paralegal, who ultimately make paralegal hiring decisions.[27]   In addition, the Lead Paralegal is responsible for providing informal discipline and coaching to his or her direct reports as well as job training.[28]   When formal discipline is necessary, the Lead Paralegal works with the human resources manager and Supervisor Paralegal to determine the appropriate level of discipline.[29]   While the human resources manager and Supervisor Paralegal are ultimately responsible for imposing formal discipline, the Lead Paralegal's input on the appropriate discipline, including termination, is given substantial deference.[30]   Further, the Lead Paralegal provides feedback on performance to his or her subordinates as well as to human resources, and the Lead Paralegal's input on performance is relied upon in setting compensation and bonuses for the direct reports.[31]   While

---

[23] Anderson Decl., Ex. 1, at ¶ 13.
[24] Anderson Decl., Ex. 1, at ¶ 13.
[25] Anderson Decl., Ex. 1, at ¶ 14.
[26] Anderson Decl., Ex. 1, at ¶ 14.  Alvarado Dep., Ex. 2, at 54:16-55:13.
[27] Anderson Decl., Ex. 1, at ¶ 15.
[28] Anderson Decl., Ex. 1, at ¶ 16.  Alvarado Dep., Ex. 2, at 43:7-15.
[29] Anderson Decl., Ex. 1, at ¶ 16.
[30] Anderson Decl., Ex. 1, at ¶ 16.
[31] Anderson Decl., Ex. 1, at ¶ 17.

these are job duties of all Lead Paralegals, the day to day job duties and the amount of time spent on any of the foregoing tasks will vary greatly between Lead Paralegals.[32]

Docket Paralegals also have critical responsibility for ensuring the proper functioning of the docket.[33]  The job duties of Docket Paralegals include communicating with clients, opposing counsel, and the court regarding matters of significance; drafting discovery and other pleadings; performing legal research; overseeing discovery and document production; and assembling materials for hearings, mediations, depositions, and trials.[34]  While these are job duties of Docket Paralegals, the day to day job duties of any given Docket Paralegal and the amount of time spent performing any of these tasks varies greatly.[35]  For example, some Docket Paralegals may spend a considerable amount of time drafting discovery and pleadings, while others will rarely if ever do so.[36]  Likewise, some Docket Paralegals perform legal research while others do not, and only some Docket Paralegals communicate with courts and other third parties.[37]  Similarly, the amount of discretion a given Docket Paralegal exercises in performing a given job task and the amount of responsibility the Docket Paralegal is charged with varies greatly depending on how both the lead docket attorney and the Lead Paralegal operate any given docket, and the experience of the Docket Paralegal.[38]  Alvarado was employed as a Docket Paralegal for Defendant from August 3, 2009, until July 2, 2010, and paid on a salary basis.[39]

---

[32] Anderson Decl., Ex. 1, at ¶ 25.
[33] Anderson Decl., Ex. 1, at ¶ 18.
[34] Anderson Decl., Ex. 1, at ¶ 18.  Alvarado Dep., Ex. 2, at 45:13-19, 46:14-19, 47:5-10, 47:24-48:4, 49:25-50:13
[35] Anderson Decl., Ex. 1, at ¶ 19.
[36] Anderson Decl., Ex. 1, at ¶ 19.  For example, Alvarado testified that he rarely drafted pleadings, as such drafting was done by Defendant's Petition Writers.  Alvarado Dep., Ex. 2, at 46:20-22.
[37] Anderson Decl., Ex. 1, at ¶ 19.  For example, Alvarado testified that he only performed legal research occasionally.  Alvarado Dep., Ex. 2, at 47:11-14.
[38] Anderson Decl., Ex. 1, at ¶ 19.  Alvarado Dep., Ex. 2, at 66:15-67:2.
[39] Anderson Decl., Ex. 1, at ¶ 28.  Alvarado Dep., Ex. 2, at 25:16-21, 28:13-15.

Defendant also employs a Supervisor Paralegal.[40]  The Supervisor Paralegal is a Lead Paralegal for one of the dockets; however, and as the title indicates, the Supervisor Paralegal has additional supervisory responsibilities beyond those of the Lead Paralegals.[41]  The Supervisor Paralegal interviews paralegal candidates and participates in making paralegal hiring decisions regardless of which docket the candidate is expected to be assigned to.[42]  In addition, the Supervisor Paralegal participates in formal discipline of paralegals, and the Supervisor Paralegal's input on formal discipline, including termination matters, is given substantial weight.[43]  The Supervisor Paralegal is also responsible for training Lead Paralegals and Docket Paralegals and ensuring compliance with applicable procedures.[44]  For example, the Supervisor Paralegal conducts a weekly meeting with all paralegals where the Supervisor Paralegal will provide guidance on procedures and updates on other firm matters.[45]  The Supervisor Paralegal also provides guidance and input to human resources in setting compensation for all paralegals and other matters of significance.[46]  Davis was employed by Defendant as a Supervisor Paralegal until February 27, 2009, and paid on a salary basis.[47]

Davis and Alvarado have very different descriptions of the structure of the firm and the job duties of paralegals.[48]  Davis was present for Alvarado's deposition and after hearing his description of his job duties and the structure of the firm, she testified as follows:

Q:      So it was really almost a totally different law firm at that point.

A:      It sounds that way, yes.[49]

---

[40] Anderson Decl., Ex. 1, at ¶ 20.  Alvarado Dep., Ex. 2, at 41:7-9.
[41] Anderson Decl., Ex. 1, at ¶ 21.  Alvarado Dep., Ex. 2, at 41:22-42:3, 58:16-59:6.
[42] Anderson Decl., Ex. 1, at ¶ 22.
[43] Anderson Decl., Ex. 1, at ¶ 22.
[44] Anderson Decl., Ex. 1, at ¶ 23.  Alvarado Dep., Ex. 2, at 57:23-58:6.
[45] Anderson Decl., Ex. 1, at ¶ 23.  Alvarado Dep., Ex. 2, at 57:23-58:15.
[46] Anderson Decl., Ex. 1, at ¶ 24.
[47] Anderson Decl., Ex. 1, at ¶ 27.  Davis Dep., Ex. 3, at 33:18-23, 84:24-85:2.
[48] *See* Davis Dep., Ex. 3, at 86:11-87:8.

Based on Plaintiffs' own testimony, there were critical differences in the work they claim to have performed as well as the work of other paralegals.[50]

## C.    The Method Of Compensation And Work Hours Varies Among Paralegals

The manner in which paralegals are compensated and the number of hours they work varies significantly between Supervisor, Lead, and Docket Paralegals.[51]   Depending on their job duties and positions, some paralegals are paid on a salary basis and others are paid on an hourly basis and receive overtime.[52]   The amount of compensation also varies significantly depending on the particular paralegal's position, responsibilities, tenure, and other factors, with some earning in excess of $100,000 and others earning much less.[53]   The hours worked by any paralegal fluctuates widely in any given week based on numerous factors, including the demands of the docket, responsibilities of the person, and personal matters such as vacation and sick time.[54]   For example, some paralegals work less than forty hours per week, while Alvarado testified that he worked forty to sixty hours per week (which Defendant disputes), and Davis testified that she worked between sixty and eighty hours per week (which Defendant disputes).[55]

## V.    ARGUMENTS AND AUTHORITIES

## A.    Plaintiffs Bear The Burden To Establish Certification Is Warranted

While the Fifth Circuit has not endorsed a particular method for class certification under 29 U.S.C. § 216(b), most courts follow the "two-stage" *Lusardi* method.   *Badgett v. Texas Taco Cabana, L.P.*, No. H-05-3624, 2006 U.S. Dist. LEXIS 74530, *3 (S.D. Tex. Oct. 12, 2006).[56]   At

---

[49] Davis Dep., Ex. 3, at 87:6-8.
[50] *See* Davis Dep., Ex. 3, at 86:11-87:8, 133:10-12.
[51] Anderson Decl., Ex. 1, at ¶ 25.
[52] Anderson Decl., Ex. 1, at ¶ 25.
[53] Anderson Decl., Ex. 1, at ¶ 25.
[54] Anderson Decl., Ex. 1, at ¶ 26.
[55] Anderson Decl., Ex. 1, at ¶ 26.   Davis Dep., Ex. 3, at 36:12-16.   Alvarado Dep., Ex. 2, at 84:7-15.   Moreover, Alvarado admitted that his hours fluctuated, and that he was aware that there were large differences in the hours worked each week by each paralegal.   Alvarado Dep., Ex. 2, at 84:7-15; 91:1-16; 130:19-23.
[56] Copies of all unpublished cases are attached as Exhibit 4.

the conditional certification stage, Plaintiffs bear the burden of proof and must prove that (1) they are similarly situated to the members of the putative class, (2) members of the putative class "were together the victims of a single decision, policy, or plan" that violates the FLSA; and (3) members of the putative class desire to opt-in to the lawsuit, and the Court enjoys wide discretion in determining whether Plaintiffs have met their burden for conditional certification. *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, *23-24 (S.D. Tex. Apr. 11, 2006).   When examining whether a plaintiff has presented sufficient evidence to justify conditional certification, the court "does not accept the substance of plaintiffs' affidavits or depositions over that submitted by the defendants" and Plaintiffs do not enjoy the benefit of any presumptions or favorable inferences.   *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2007 U.S. Dist. LEXIS 17259, *28 (S.D. Tex. Mar. 12, 2007).   Where some discovery has taken place, as is the case here, courts give weight to the depositions and other discovery.   *See Aguirre*, 2007 U.S. Dist. LEXIS 17259 at *27-28.

Collective treatment is only appropriate when "common issues of law and fact arising from the same alleged … activity" promote efficiency and judicial economy.   *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).   This is because it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated."   *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003);   *Badgett*, 2006 U.S. Dist. LEXIS 74530, at *5 (denying conditional certification and noting that, although 115 FLSA cases were filed in 2005 in the Southern District of Texas purporting to be collective actions, only seventeen were certified as appropriate for collective action status).   In fact, several courts have noted that they "have a responsibility to avoid 'stirring

10

up' litigation through unwarranted solicitation" when it is apparent that the putative class cannot adjudicate their claims on a representative basis. *Freeman*, 256 F.Supp.2d at 944; *Songer v. Dillon Res., Inc.*, 569 F.Supp.2d 703, 706-707 (N.D. Tex. 2008).

Moreover, the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 1541 (2011), articulated a heightened standard for certification of class actions. Although *Dukes* was decided in the context of a Rule 23 class action, courts have applied the principles articulated in the Court's decision in the context of conditional certification under the FLSA. *See Ruiz v. Serco, Inc.*, No. 10-cv-394-bbc, 2011 U.S. Dist. LEXIS 91215, *18-19 (W.D. Wis. Aug. 5, 2011) (noting that the Supreme Court's "discussion of the propriety of class actions [in *Dukes*] generally provides guidance in deciding when certification of a collective action under the FLSA is appropriate."). In *Dukes*, the Supreme Court held that class certification was inappropriate where the claims of all class members did not depend on a "common contention … capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2251, 2258-59.[57] The Supreme Court further found that class certification was also improper where the claims for back pay would require individualized factual inquiries because class treatment would run afoul of the Due Process Clause by providing insufficient protections to adequately defend such claims. *Id.* Accordingly,

---

[57] Application of Rule 23's commonality analysis is particularly appropriate to conditional certification under the FLSA. First, due in part to the fact that the FLSA does not define "similarly-situated," many courts have borrowed from Rule 23(a)(2)'s commonality standard in determining whether to grant conditional certification. *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1270 (M.D. Ala. 2004) (under § 216(b), "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the proposed class."); *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220 (D. Conn. 2003) (same). Second, even accepting that courts are not required to apply Rule 23 as a whole to analysis of conditional certification under § 216(b), they certainly have drawn from the rule's commonality element in crafting the contours of the § 216(b) analysis. *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F.Supp.2d 411, 416, n.1 (D. Del. 2007) ("[t]he various inquiries concerning a Rule 23 class … while not controlling … are instructive and lend useful guidance in considering the similarly situated requirement of a section 216(b) class."); *Diaz v. Elec. Boutique of Am., Inc.*, No. 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS, *23 (W.D.N.Y. Oct. 17, 2005); *Lentz v. Spanky's Restaurant II, Inc.*, 491 F.Supp.2d 663, 670 (N.D. Tex. 2007).

although Plaintiffs' Motion cites to pre-*Dukes* authority and speaks of a low evidentiary burden, *Dukes* mandates a more rigorous review as to whether the putative class members are similarly-situated – in regards to their job duties, their pay, and their damages – to prove that conditional certification is warranted.[58]

**B.      Plaintiffs Fail To Prove That The Putative Class Members Are Similarly-Situated As Each Putative Class Member's Exempt Status Requires A Highly Individualized Inquiry**

To obtain conditional certification, Plaintiffs must establish, through competent, admissible evidence that there are other individuals "who are 'similarly situated' [to them] with respect to their job requirements and with regard to their pay provisions.'"  *See Songer*, 569 F. Supp. 2d at 707-8.  Here, Plaintiffs cannot show that they are similarly-situated to each other, much less to any other members of the putative class, and the Motion fails.

*1.      Plaintiffs' declarations are unreliable and fail to carry their burden to establish that a putative class of similarly-situated individuals exists.*

As an initial matter, the sparse, conclusory declarations submitted with Plaintiffs' Motion are insufficient to carry their burden to show that the putative class is similarly-situated.  Both declarations are essentially identical, and contain only one sentence regarding Plaintiffs' job duties, followed by the conclusory allegation that "[m]y job duties were typical of those performed by my paralegal colleagues at the firm," without any foundation to support such an assertion.  *See* Plaintiffs' Motion, Exs. 1, 2.  In contrast to the declarations, Plaintiffs admit that they have no personal knowledge regarding the job duties performed by (1) any other paralegals on a day-to-day basis; (2) paralegals in any office other than Defendant's Houston office; and (3)

---

[58] The due process concerns articulated in *Dukes* are well founded because forcing Defendant to undertake the burden and expense of conducting class-wide discovery and litigating decertification where there is no evidence that a similarly-situated class exists operates to deprive Defendant of Constitutional protections.  As a practical matter, class-wide discovery is often so costly as to leave employers with little choice other than to settle the case; in this manner, conditional certification frequently operates as a watershed event in the litigation that deserves heightened protection under the Due Process Clause.

any paralegals after the time Plaintiffs left Defendant's employment – at least seventeen months ago.[59]   Courts have consistently found that such bare, conclusory affidavits are insufficient to carry Plaintiffs' burden to establish that any class should be conditionally certified.  *Clark v. City of Fort Worth,* No. 4:10-CV-519-A, 2011 U.S. Dist. LEXIS 3082, at *9-11 (N.D. Tex. Jan. 11, 2011) (conclusory allegations in four affidavits insufficient to support conditional certification); *Stiles v. FFE Transp. Servs.,* No. 3:09-CV-1535-B, 2010 U.S. Dist. LEXIS 24250, at *7-9 (N.D. Tex. Mar. 15, 2010) (denying conditional certification where "[e]ach Plaintiff's declaration is close to identical in substance and consists primarily of conclusory allegations unsupported by any facts based on either Plaintiff's own personal knowledge"); *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 U.S. Dist. LEXIS 71765, at *9-11 (S.D. Tex. Aug. 14, 2009) (same).

Further, based on Plaintiffs' own deposition testimony, their declarations are less than reliable.  Alvarado testified that the description of his job duties in his declaration was not accurate, and only included duties he performed occasionally.[60]   He also testified that, as to four of the five individuals he identified as class members (i.e. paralegals who worked over 40 hours per week and were not paid overtime), he has no idea whether those individuals (1) were paralegals, (2) were classified as exempt, (3) worked overtime, and/or (4) were paid overtime.[61] Similarly, Davis testified that she did not include many of her job duties in the single sentence of her declaration regarding her job duties.[62]   And, although she stated in her declaration that her duties "were typical of those performed by [her] paralegal colleagues," Davis admitted that her knowledge of the job duties performed by others was based on limited interaction with other

---

[59]  Alvarado Dep., Ex. 2, at 30:20-31:4; 64:10-66:14; 69:22-71:4; 73:18-74:11;  Davis Dep., Ex. 3, at 24:13-16; 84:24-85:10; 122:18-25.
[60]  Alvarado Dep., Ex. 2, at 121:7-122:19.
[61]  Alvarado Dep., Ex. 2, at 110:22-111:18; 112:2-115:6; 116:18-117:22; 119:20-23; 127:1-5.
[62]  Davis Dep., Ex. 3, at 99:12-100:17.

paralegals over two years ago.[63]   Accordingly, the declarations should be disregarded and Plaintiffs' Motion fails as a matter of law.

**2.   *No class of similarly-situated individuals exists because highly individualized fact-specific inquiries are required to determine whether each member of the putative class is exempt.***

Setting aside the deficient evidence offered by Plaintiffs, the facts confirm that Plaintiffs are not similarly situated to each other, let alone other paralegals.  In fact, when testifying about Alvarado's description of the law firm and his duties, Davis testified that his description "sounded like it was really almost a totally different law firm."[64]   Regardless of the Plaintiffs' inability to reconcile their version of events, the facts confirm that substantial differences exist between the paralegals.  The individuals Plaintiffs seek to represent work in three distinct jobs in different cities for different supervisors, and their job duties and reporting structure vary widely. To name just a few key variations:

- Some paralegals supervised paralegals and support staff and others did not;
- Some paralegals interviewed prospective candidates and participated in hiring decisions and others did not;
- Some paralegals participated in disciplinary and termination matters and others did not;
- Some paralegals participated in setting compensation and others did not; and
- Some paralegals exercised discretion in assigning projects to subordinates and others did not.

It is undisputed that the scrutiny required to determine "whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of time spent performing duties and a careful factual analysis of the full range of the employee's job duties and responsibilities."  *Mike*, 274 F.Supp.2d at 220;  *Holt*, 333 F.Supp.2d at 1271-72.  When the record evidence demonstrates that a group of employees have different work responsibilities and perform different job duties – as is the case here – courts routinely deny conditional certification.

---

[63] Davis Dep., Ex. 3, at 122:18-25.
[64] Davis Dep., Ex. 3, at 87:6-8.

*Aguirre*, 2006 U.S. Dist. LEXIS 22211, at \*22-23 (denying conditional certification because "the exempt or nonexempt status of the opt-in plaintiffs would need to be determined on an employee-by-employee basis");  *Reich v. Homier Distributing Co., Inc.*, 362 F.Supp.2d 1009, 1013-14 (N.D. Ind. 2005) (denying conditional certification because liability would turn on an "individual determination of each employee's duties"); *Wombles v. Title Max of Ala., Inc.*, No. 3:03-cv-1158-C (WO), 2005 U.S. Dist. LEXIS 34733, \*16-19 (M.D. Ala. Dec. 7, 2005) (denying conditional certification because it would "require a fact-specific, case-by-case intensive inquiry of each plaintiff by the court.").

Moreover, these varying job duties lend themselves to varying potential exemptions that will be applicable to different class members.  For example, some Supervisor Paralegals may fall under the executive exemption,[65] highly compensated employee exemption,[66] and/or combination exemption.[67]   Conversely, some Lead Paralegals may fall under the executive and/or combination exemptions.   In contrast, some Docket Paralegals may fall under the administrative exemption, which could also be applicable to Supervisor and Lead Paralegals.[68]

---

[65] The executive exemption applies to any employee (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status or other employees are given particular weight.  29 C.F.R. § 541.100(a); *see also Rainey v. McWane, Inc.*, 314 Fed. Appx. 693, 695-96 (5th Cir. 2009).

[66] "An employee with total annual compensation of at least $100,000 is deemed exempt … if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee …"  29 C.F.R. 541.601(c).

[67] "Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption."  29 CFR § 541.708.

[68] The administrative exemption applies to any employee (1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a); *see also Austin v. CUNA Mutual Ins. Society*, 240 F.R.D. 420, 428-31 (W.D. Wisc. 2006) (finding paralegal exempt under administrative exemption).

Moreover, some paralegals – such as Alvarado – have advanced degrees or certifications that aid in the performance of their job duties and may fall under the professional exemption.[69]

Thus, if certified, Plaintiffs' purported collective action lawsuit will not only require a highly-individualized and fact-specific inquiry into each potential class member's actual job duties, the time spent performing those duties, and the relative importance of each duty – it will also require an entirely different application of law, depending on the employee at issue.  The individualized nature of the putative class claims and the resultant potential application of at least five different exemptions under the FLSA renders this matter wholly unworkable as a collective action.  *See Aguirre*, 2006 U.S. Dist. LEXIS 22211, at *22-23 (denying conditional certification because "the exempt or nonexempt status of the opt-in plaintiffs would need to be determined on an employee-by-employee basis").

The propriety of denying conditional certification based on the many individualized inquiries present in this case is confirmed by recent Supreme Court authority.  In *Dukes*, the Supreme Court made clear that "[w]hat matters to class certification … is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 131 S.Ct. at 2551 (emphasis in original).  Accordingly, to justify class treatment, the claims of all class members must depend "on a common contention … capable of classwide resolution, which means that

---

[69] The professional exemption applies to any employee (1) compensated on a salary basis at a rate of not less than $455 per week; and (2) whose primary duty is the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction, or requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.  29 C.F.R. § 541.300.  Moreover, "the learned professional exemption is available for paralegals who possess advanced specialized degrees in other professional fields and apply advanced knowledge in that field in the performance of their duties. For example, if a law firm hires an engineer as a paralegal to provide expert advice on product liability cases or to assist on patent matters, that engineer would qualify for exemption."  29 C.F.R. 541.301(e)(7).  Alvarado testified that he had a law degree, which aided him in the performance of his duties while employed by Defendant.  Alvarado Dep., Ex. 2, at 13:17-14:10; 27:19-28:12.  Moreover, Davis testified that she was certified by the Texas Board of Legal Specialization as a civil trial paralegal.  Davis Dep., Ex. 3, at 7:22-8:13; 9:13-11:14, 27:22-1.

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Moreover, the Court noted that "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*.

The facts here stand in stark contrast to the requirements for class treatment as presented in *Dukes*. For the reasons described above, the many individual inquiries necessary to establish whether any given paralegal is exempt under one of five possible exemptions will make it impossible to generate common answers that will drive the resolution of the claims of all class members. "It is not enough for plaintiffs to raise a common question as to whether they and other employees with some similar job duties were properly classified as exempt… [r]ather, the answer to that question must be susceptible to proof that can be extrapolated to the class plaintiffs seek to represent." *Ruiz*, 2011 U.S. Dist. LEXIS 91215, at *19. Because exempt status is by its very nature – and specifically in this case – a highly individualized analysis, conditional certification is not appropriate. *Id*. (denying conditional certification because "[i]t would be difficult to generate common answers in light of the individualized inquiries arising from the wide variations in duties, experience, responsibility, discretion, and supervisors on the part of the potential class members").

Finally, even if the Court determines that the paralegals are similarly situated in relation to their job duties, conditional certification is nonetheless inappropriate given the highly individualized nature of the calculation of damages in this case. In *Dukes*, the Supreme Court rejected a "trial by formula" approach to litigation of back pay damages, holding that such an approach prevents the employer from litigating its defenses to individual claims and thereby violates Due Process. *Dukes*, 131 S.Ct. at 2257. Certainly, the Due Process concerns which led

to this result in *Dukes* apply equally to claims under the FLSA.[70]  In this case, Plaintiffs seek to recover back wages.  However, the Plaintiffs' testimony demonstrates that their claims for back wages cannot be analyzed alongside each other, much less any other putative class members.  To the contrary, Plaintiffs' testimony establishes that a week-by-week analysis of each class member's damages would have to be conducted, and the number of hours worked by any paralegal in any given week fluctuates widely.[71]  Accordingly, in light of *Dukes*, Defendant should not be forced to undergo the time and expense associated with class-wide discovery and litigating decertification where no common issues with regard to damages exist.  *Id.;  see also Odem v. Centex Homes*, No. 3:08-CV-1196-L, 2010 WL 424216, *6 (N.D. Tex. Feb. 4, 2010) (finding that "because the proposed class in this case involves so many distinct questions that must be posed to the jury, the class would be unmanageable," and denying conditional certification on the basis of fairness and procedural considerations).

### 3.    Plaintiffs' proposed class cannot be similarly-situated because many members of the proposed class were, at all times, classified as non-exempt

The class Plaintiffs request to be certified – all paralegals employed by Defendant within the three years preceding the filing of this lawsuit – includes <u>both exempt salaried employees, as well as non-exempt hourly employees</u>.[72]  Plaintiffs' only claim is that they, and other alleged similarly situated paralegals, were <u>misclassified as exempt</u>, paid a salary, but not paid overtime.[73]  Accordingly, such claims cannot support the certification of a class, conditional or otherwise, that includes individuals who were, at all times, <u>classified as non-exempt</u>, paid on an hourly

---

[70] At least one court since *Dukes* has decertified a class based on this aspect of the Court's decision.  *See Cruz v. Dollar Tree Stores, Inc.*, No. 07-04012, 2011 U.S. Dist. LEXIS 73938, *19 (N.D. Cal. July 8, 2011) ("In light of the Supreme Court's rejection of [the "trial by formula"] approach, it is not clear to the Court how, even if class-wide liability were established, a week-by-week analysis of every class member's damages could be feasibly conducted.").

[71] Davis Dep., Ex. 3, at 36:12-16; Alvarado Dep., Ex. 2, at 84:7-15; 91:1-16; 130:19-23; Anderson Decl., Ex. 1, at ¶ 26.

[72] Anderson Decl., Ex. 1, at ¶25;  Alvarado Dep., Ex. 2, at 5:19-21.

[73] Alvarado Dep., Ex. 2, at 28:24-29:20; Davis Dep., Ex. 3, at 29:20-30:10.

basis, and paid overtime.  *Diaz*, 2005 U.S. Dist. LEXIS, at *11-19 (the differences between the analysis required to establish claims for exempt and non-exempt employees found too different to certify a class encompassing both).

**C.      Plaintiffs Have Failed To Identify A Common Policy That Violates The FLSA**

Plaintiffs' Motion fails for the independent reason that Plaintiffs have offered no evidence that "the putative class members were together the victims of a single decision, policy, or plan" that violates the FLSA.  *Songer*, 569 F.Supp.2d at 707.  This requirement exists because collective actions were designed to limit certification to those instances in which liability for **all** opt-in plaintiffs can be accurately determined by examining a representative sample of plaintiffs. *Hinojos v. Home Depot, Inc.*, No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434, *8 (D. Nev. Dec. 1, 2006) ("[T]he need for separate mini-trials to resolve each individual's claim … is the anti-thesis of collective action treatment.").

In this case, Plaintiffs cannot identify a single decision, policy, or plan that violates the FLSA that would allow this case to proceed as a collective action.  Instead, Plaintiffs assert in conclusory fashion that they were misclassified as exempt under the FLSA.  *See* Motion at 1. Even accepting this assertion as true, it is wholly irrelevant because the law is settled that an employer's classification of employees is not a "decision, policy, or plan" that supports collective action treatment.  *Trinh v. J.P. Morgan Chase & Co.*, No. 07-CV-1666 W (WMC), 2008 U.S. Dist. LEXIS 33016, *11, n.2 (S.D. Cal. Apr. 22, 2008) ("Because Plaintiffs' only allegation that Defendants engaged in a wrongful policy is that Defendants uniformly classified Plaintiffs and other loan officers as 'exempt,' the Court follows *Morisky* and other courts in finding that Plaintiffs have failed to make substantial allegations identifying an unlawful nationwide policy."); *Mike*, 274 F.Supp.2d at 221.  In fact, as courts have aptly noted:

19

> [T]he mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.  If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits.

*Colson v. Avnet, Inc.*, No. 09-603-PHX-MHM, 2010 U.S. Dist. LEXIS 12620, *32-33 (D. Ariz. Jan. 27, 2010).  Plaintiff's reliance on mere classification is misplaced, and settled law requires that Plaintiff's Motion be denied.

**D.     Plaintiffs Have Not Established That Potential Class Members Desire To Opt-In To The Proposed Collective Action**

To meet their burden for conditional certification, Plaintiffs must prove that there are other individuals in the putative class who want to opt-in.  *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, *34 (S.D. Tex. Jan. 24, 2007).  "Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join this lawsuit. … Rather, a showing that others desire to opt-in is required before certification and notice will be authorized by the court."  *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-CV-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272, *8 (M.D. Fla. Mar. 23, 2006) (emphasis in original); *Simmons,* 2007 U.S. Dist. LEXIS 5002, at *34. The existence of Alvarado and Davis themselves is insufficient to meet this threshold showing as a matter of law.  *See Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1165-67 (D. Minn. 2007) (the presence of two plaintiffs does not satisfy plaintiff's burden to show that other similarly situated employees want to opt-in); *Lentz*, 491 F.Supp.2d at 669-70 (one opt-in plaintiff does not satisfy plaintiff's burden to prove that others want to join the lawsuit).  Instead, Plaintiffs must present evidence demonstrating that others seek to join the case, and "[a] plaintiff's or counsel's belief in the existence of other employees who desire to opt-in and 'unsupported expectations that additional

20

plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice to a potential class." *Rodgers*, 2006 U.S. Dist. LEXIS 23272, at *8; *see also Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272, 1277 (M.D. Ala. 2004).

The totality of Plaintiffs' showing on this element is the following assertion in the Motion: "*[u]pon information and belief*, there are numerous other paralegal employees who are putative class members located in Houston and other Texas cities." *See* Plaintiffs' Motion, at 8 (emphasis added). Not only does the assertion concede that it is a mere belief that is insufficient to establish this element, but Plaintiffs cite no evidence whatsoever in support of this belief – and the declarations submitted by Plaintiffs contain no reference to others desiring to opt-in. Plaintiffs fail to meet the threshold requirement to prove that others desire to opt-in, and the Motion fails as a matter of law. *Detho v. Bilal*, No. H-07-2160, 2008 U.S. Dist. LEXIS 29502, *17-18 (S.D. Tex. Apr. 10, 2008) (denying conditional certification where plaintiff only stated that she "believes" other employees may want to join).

**E.    Alternatively, The Scope Of Plaintiffs' Proposed Class, Notice Procedures And Form Of Notice Must Be Modified**

While Defendant believes that Plaintiffs have failed to carry their burden and conditional certification is wholly inappropriate in this case, out of an abundance of caution, Defendant alternatively submits that, at a minimum, the scope of the proposed class, and the proposed forms and procedures for notice and consent, should be modified as set forth below.

> *1.    The class to which Plaintiffs request notice be sent is defective because it impermissibly seeks to expand the class which Plaintiffs purport to represent*

Plaintiffs' First Amended Complaint asserts that "the class of similarly situated Plaintiffs is properly defined as follows: … all of Defendant's current and former paralegal employees who worked more than forty (40) hours in a workweek but were not paid one and one-half times their regular rate of pay at any time starting three years before this Complaint was filed up to the

present."  *See* Plaintiffs' First Amended Complaint, at ¶ 36.  However, in Plaintiffs' Motion, Plaintiffs request that notice be sent to "all paralegals/legal assistants who worked for Defendant at any time during the period from August 3, 2008 through the present."  *See* Plaintiffs' Motion, at 14.  Such a request expands the scope of the putative class from that pled in Plaintiffs' First Amended Complaint to include: (1) an entirely separate class of employees – legal assistants – to which Plaintiffs have provided no evidence that they are similarly situated; and (2) paralegals who were, at all times, classified as non-exempt and paid for all overtime worked.  Not only is such an expanded scope of notice impermissible based on the putative class sought to be represented by Plaintiffs as pled in their First Amended Complaint, it is not supported by any evidence.  Accordingly, Plaintiffs' overbroad notice is facially defective and should not be authorized by the Court or, in the alternative, should be limited such that notice is <u>not</u> authorized to (1) legal assistants; and (2) paralegals who were, at all relevant times, classified as non-exempt.

## 2.     *The putative class should be limited to Salaried Supervisor Paralegals in Defendant's Houston office.*

Courts generally limit notice to the geographical scope raised by the plaintiff's evidence. *Updite v. Delta Beverage Group, Inc.*, No. CIV A 06-0593, 2006 U.S. Dist. LEXIS 90719, at *4-5 (W.D. La. Dec. 15, 2006) (certifying a collective action only for two facilities in Louisiana based on affidavits specific to those two facilities); *Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762-Orl-28JGG, 2007 U.S. Dist. LEXIS 26160, at *10-11 (M.D. Fla. Apr. 9, 2007) (limiting conditional certification to the one store where the plaintiff worked where the plaintiff presented only two affidavits from employees working at the same store).  Here, both Plaintiffs were employed exclusively in Defendant's Houston office, and admit that they have no personal

knowledge of the job duties of any paralegals in any of Defendant's other offices.[74]  With such limited evidence, Plaintiffs' Motion fails to support conditional certification on a firm-wide basis.  Accordingly, if conditional certification and notice are granted at all (which is improper), then the proposed putative class and scope of notice should be limited to current and former salaried Supervisor Paralegals (Davis' position) employed in Defendant's Houston, Texas, office (where Plaintiffs worked) during the two years preceding any order granting notice.

> **3.    The notice period and putative class should be limited to two years prior to any order granting notice**

Absent a showing of willfulness, the statute of limitations under the FLSA is two years. 29 U.S.C. § 255(a).  An employer engages in a "willful" violation only if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988).  Something more than a bare allegation of willfulness is required to extend the temporal scope for notice to three years. *Cohen v. Allied Steel Buildings, Inc.*, 554 F.Supp.2d 1331, 1335 (S.D. Fla. 2008).  Here, Plaintiffs do not provide any support for their allegation that Defendant willfully violated the FLSA and, thus, cannot support their request for a three-year notice period.  Thus, the temporal scope of any notice should be limited to Supervisor Paralegals employed by Defendant during the two years immediately preceding any order approving notice.  *Id.* (explaining that the plaintiff must establish facts supporting a willful violation before sending notice based on a three-year statute of limitations period).

Moreover, it is well settled that limitations under the FLSA runs from date an individual files their notice of consent to opt-in.  *Muhammad v. GBJ, Inc.*, No. H-10-2816, 2011 U.S. Dist.

---

[74] Alvarado admits he was employed in Defendant's Houston office, never worked in any office outside of Defendant's Houston office, and only spoke to paralegals in the Beaumont office once per week for fifteen minutes and during a meeting with all paralegals once per quarter.  Alvarado Dep., Ex. 2, at 30:20-31:22; 64:6-66:14.  Davis admits that she was employed only in Defendant's Houston office.  Davis Dep., Ex. 3, at 24:13-16.

LEXIS 23589, *4-5 (S.D. Tex., Mar. 9, 2011). Accordingly, the temporal scope of any notice and discovery should run from the date of <u>any order approving notice</u>, not the date the lawsuit was filed. *See Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2005 U.S. Dist. LEXIS 34033, at *50-51 (holding that a class period must run from the date notice is approved).

### 4. The proposed notice requires substantial revision to provide objective and neutral notice.

To facilitate the opt-in process and to counter "the potential for misuse of the class device," special attention must be paid to respect neutrality and ensure that notice contains information that a reasonable person would consider material in making an informed, intelligent decision on whether to join. *Id.* at 170-71, 174; *Kreher v. City of Atlanta*, 1:04-cv-2651-WSD, 2006 U.S. Dist. LEXIS 23094, *22 (N.D. Ga. Mar. 20, 2006). Plaintiffs' proposed notice and consent forms are deficient in numerous respects, including but not limited to (1) failing to advise potential opt-ins of their rights and responsibilities, such as participating in discovery and the possibility they could be required to pay Defendant's costs;[75] and (2) unreasonably expanding the opt-in period beyond the standard thirty days embraced by many courts.[76] Rather than burden the court with every deficiency at this stage, Defendant requests that the Court allow the parties to meet and confer regarding the content of the notice and consent form and submit a joint proposed form within 15 days of the Court's ruling should the Court grant conditional certification. *See Jackson v. City of San Antonio*, 220 F.R.D. 55, 63 (W.D. Tex. 2003).

---

[75] *See McKinzie v. Westlake Hardware, Inc.*, No. 09-0796-CV-W-FJG, 2010 U.S. Dist. LEXIS 58078, *13 (W.D. Mo. June 11, 2010) (finding that the "[n]otice should also advise members of the class of discovery and other obligations, as well as the need to be present in [the city where the suit was filed]" for depositions, hearings or trial); *see also Wlotkowski v. Michigan Bell Telephone Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010) (approving language stating "[i]f you join the lawsuit, you may be required to respond to written questions, sit for a deposition, and testify in court."); *Foraker v. Highpoint Southwest, Servs. L.P.*, No. H-06-1856, 2006 U.S. Dist. LEXIS 63951, *22 (S.D. Tex. Sept. 7, 2006) (noting that, on defendant's objection, the court would include the fact that class members could be liable for court costs in the notice)
[76] *Harris v. Healthcare Serv. Group, Inc.*, No. 06-2903, 2007 U.S. Dist. LEXIS 55221, *10-11 (E.D. Pa. Jul. 31, 2007) (prospective class members given 30 days from date of mailing of notice to mail their Notice of Consent); *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1106-07 (M.D. Ala. 2003) (all notices of consent ordered to be filed within 30 days of mailing of notice); *Williams v. Long*, 585 F.Supp.2d 679 (D. Md. 2008) (same).

24

Alternatively, Defendant respectfully requests the opportunity to submit briefing fully addressing all aspects of the content of the notice and consent form.

### 5. *The scope of the requested discovery should be limited*

Plaintiffs' Motion proposes that "the notice and consent forms be mailed by first class mail to all potential opt-ins…" *See* Plaintiffs' Motion, at 12. However, Plaintiffs' request for current and former paralegals' telephone numbers, dates of birth, and social security numbers far exceeds the information required to <u>mail</u> notice. The disclosure of such personal identifying information gives rise to serious privacy concerns, including the risk of identity theft, and courts routinely limit such information to <u>only a mailing list</u>. *See Humphries v. Stream Int'l, Inc.*, No. 3:03-CV-1682-D, 2004 U.S. Dist. LEXIS 20465, at *11-13 (N.D. Tex. Feb. 13, 2004) (denying request for telephone numbers, dates of birth, and social security numbers); *Vogt v. Tex. Instruments, Inc.*, No. 3:05-CV-2244-L, 2006 U.S. Dist. LEXIS 67226, at *11-13 (N.D. Tex. Sept. 19, 2006) (denying request for telephone numbers and social security numbers).

Similarly, Plaintiffs' request for a declaration from Defendant stating what efforts were taken to assemble names and addresses of putative class members should be denied. *See* Plaintiffs' Motion, at 13. Plaintiffs' only justification for requiring such a declaration is to "encourage a thorough search for all employees in the class." *Id.* An order from this Court is more than enough to ensure that Defendant will provide all names and last known addresses for putative class members, and the request should be denied.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiffs' Motion for Expedited Class Notice and for Limited Discovery in its entirety.

Respectfully submitted,

/s/ Will Stukenberg
William R. Stukenberg
Attorney-in-Charge
State Bar No. 24051397
Federal I.D. No. 55792
wstukenberg@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

Of Counsel:

Peter J. Stuhldreher
State Bar No. 24056393
Federal I.D. No. 699821
pstuhldreher@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

ATTORNEYS FOR DEFENDANT
THE MOSTYN LAW FIRM, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the below counsel of record via CM/ECF, on this 12th day of December, 2011.

Alex Mabry
The Mabry Law Firm, PLLC
711 West Alabama Street
Houston, Texas  77006-5005

/s/ Will Stukenberg
Will Stukenberg

26