IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERRI L. DAVIS, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § | |
| v. | § § | |
| THE MOSTYN LAW FIRM, P.C. | § § | CIVIL ACTION NO. 4:11-cv-02874 |
| Defendant. | § | |

**DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF
CARLOS ALVARADO FOR COMMITTING FRAUD ON THE COURT**

William R. Stukenberg
Attorney-in-Charge
State Bar No. 24051397
Federal I.D. No. 55792
wstukenberg@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

Of Counsel:

Peter J. Stuhldreher
State Bar No. 24056393
Federal I.D. No. 699821
pstuhldreher@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

**ATTORNEYS FOR DEFENDANT
THE MOSTYN LAW FIRM, P.C.**

**TABLE OF CONTENTS**

I.  SUMMARY OF THE ARGUMENT ........................................................ 1

II.  NATURE AND STAGE OF PROCEEDINGS.................................... 2

III. ISSUES TO BE RULED UPON ...................................................... 3

IV. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND........................... 3

V.  ARGUMENT AND AUTHORITIES................................................ 8

  A.  Courts enjoy inherent authority to sanction litigants, and the striking
    of pleadings is appropriate when litigants abuse the judicial process
    by manufacturing evidence ........................................................ 8

  B.  Alvarado's declaration contains false statements regarding matters
    of substance and dismissal of his claim is the appropriate sanction ..................... 9

VI. CONCLUSION.............................................................................14

# TABLE OF AUTHORITIES

## Cases

*Brown v. Oil States Skagit Smatco,* No. 10-31257, 2011 WL 6032969 (5th Cir. Dec. 6, 2011)...8, 9, 12

*Chambers v. NASCO, Inc.*, 111 S. Ct. 2123 (1991) ......................................................... 8

*F.D.I.C. v. Hurwitz*, 384 F. Supp. 2d 1039 (S.D. Tex. 2005) ........................................ 8

*Howard v. State Farm Lloyds,* No. H-04-0352, 2005 WL 2600442 (S.D. Tex. Oct. 13, 2005)... 13

*Lee v. Sass*, 2006 WL 799176 (E.D. Mich. Mar. 29, 2006)...................................... 1, 9

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ................................................ 8

*Martin v. DaimlerChrysler Corp.,* 251 F.3d 691 (8th Cir. 2001) ................................ 8

*Pressey v. Patterson*, 898 F.2d 1018 (5th Cir. 1990)................................................ 8

*Vargas v. Peltz,* 901 F. Supp. 1572 (S.D. Fla. 1995) ............................................ 8, 9

*Young v. Office of United States Sergeant at Arms,*
     217 F.R.D. 61 (D.D.C. 2003)................................................................. 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SHERRI L. DAVIS, Individually and on** | § | |
| **Behalf of All Others Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **THE MOSTYN LAW FIRM, P.C.** | § | **CIVIL ACTION NO. 4:11-cv-02874** |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF**
**CARLOS ALVARADO FOR COMMITTING FRAUD ON THE COURT**

Defendant The Mostyn Law Firm, P.C. ("Mostyn" or "Defendant") files this Motion for Sanctions Against Plaintiff Carlos Alvarado ("Alvarado") for Committing Fraud on the Court. In support thereof, Defendant respectfully shows the Court as follows:

**I.       SUMMARY OF THE ARGUMENT**

"Coercing or seeking to obtain or manufacture false testimony strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding . . . . Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts." *Lee v. Sass*, 2006 WL 799176, at *1 (E.D. Mich. Mar. 29, 2006). Alvarado, a former attorney who resigned his license in lieu of discipline, violated this fundamental tenant of the judicial system by submitting a sworn declaration riddled with falsities to improperly obtain class certification.

In this collective action, Plaintiffs Sherri Davis and Alvarado (collectively "Plaintiffs") allege that they and purportedly similarly situated paralegal employees of Defendant were misclassified as exempt under the Fair Labor Standards Act ("FLSA") and denied overtime. In support of their Motion for Conditional Certification of a Collective Action, Plaintiffs submitted

virtually identical sworn declarations, which included <u>identical</u> descriptions of their job duties to substantiate that they were misclassified under the FLSA.  However, during the course of his deposition, Alvarado admitted that the description of his job duties in his sworn declaration was untrue.  Similarly, to establish that other aggrieved employees exist – a requirement for conditional certification – Alvarado asserted in his declaration that Blanca Garcia and Shawna Stephens were paralegals misclassified as exempt and denied overtime.  Again, during the course of his deposition, Alvarado admitted that that he has no idea whether Blanca Garcia or Shawna Stephens were misclassified or denied overtime, and in fact neither were paralegals and both were paid on an hourly basis.

Alvarado has abused the judicial process and the integrity of this Court by submitting false testimony on a material matter to support his claim.  The false testimony was relied upon to short-circuit the conditional certification process and improperly certify a class action.  The use of false testimony is all the more egregious in this instance given Alvarado's status as a former officer of the Court.  In light of the fraud he attempted to perpetrate on this Court, dismissal of his claim is warranted, and Defendant is further entitled to recover its fees for defending against the manufactured evidence.  Moreover, because the false representations Alvarado made in his declaration are virtually identical to the representations made in Davis' declaration, discovery into whether Davis and/or her counsel were parties to the falsities is not only warranted, but necessary to get to the root of the fraud.

## II.    <u>NATURE AND STAGE OF PROCEEDINGS</u>

Plaintiffs filed their Original Complaint on August 3, 2011, asserting that they and alleged similarly-situated individuals were improperly classified as exempt under the FLSA by Defendant and denied overtime pay, and Defendant timely answered and denied that Plaintiffs were entitled to any relief.  The Parties conducted limited discovery on the issue of conditional

certification, including the exchange of written discovery and the depositions of Plaintiffs. Plaintiffs moved for conditional certification of a collective action of alleged similarly situated employees, and Defendant timely responded in opposition to that Motion, which is pending before the Court.

## III.   ISSUES TO BE RULED UPON

Whether the Court should exercise its inherent authority to sanction Plaintiff Carlos Alvarado for submitting a false declaration in support of Plaintiffs' Motion for Conditional Certification.

## IV.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs are former paralegals of Defendant who initiated this collective action alleging that they and purportedly similarly situated paralegals were misclassified as exempt and denied overtime.  *See generally* First Amended Complaint (Docket No. 9).  Plaintiffs moved for conditional certification of a class of all paralegals employed by Defendant firm-wide for the past three years on October 24, 2011.  Motion for Conditional Certification (Docket No. 10). The only evidence Plaintiffs offered for this sweeping certification were their own two page, conclusory declarations regarding their alleged job duties, the alleged job duties of other paralegals, and identifying several other alleged paralegals who were unlawfully denied overtime. Motion for Conditional Certification, Exs. 1, 2 (Docket No. 10).

At the scheduling conference in this matter, Defendant requested to take limited discovery on the issue of conditional certification, contending that the conclusory declarations were insufficient to certify the sprawling class requested by Plaintiffs.  Motion for Limited Discovery (Docket No. 15).  Plaintiffs opposed the request, asserting that Plaintiffs' declarations were all the Court should rely upon to grant conditional certification.  Response to Motion for Conditional Certification, ¶ 5 (Docket No. 16).  The Court ultimately granted Defendant the right

to depose Plaintiffs limited to the issue of conditional certification, and those depositions confirm that substantive assertions made in Alvarado's declaration are untrue.  Order (Docket No. 18).

Specifically, in an attempt to substantiate that other paralegals were allegedly subjected to the same illegal pay practices (a requirement for conditional certification), Alvarado's sworn declaration, under penalty of perjury, asserts as follows: "I do not currently recall all the names of these paralegals, but I do know that the majority of them worked in excess of 40 hours per week and, like me, **were not paid overtime for those hours**.  Some of the paralegals falling into this category whose names I do recall include **Blanca Garcia**, Jesse Garza, **Shawna Stephens**, Stacy Stepp, and Stephanie Magee." Alvarado Declaration, attached as Exhibit 1, ¶ 6 (emphasis added).  However, when questioned about whether Blanca Garcia was paid overtime, Alvarado testified as follows:

Q.      Do you have any reason to believe that she [Blanca Garcia] was not paid overtime?

A.      Just – not really.  I just know that she would put in extra hours just like everyone else.

Q.      So you don't have any idea whether she was paid hourly or salary?

A.      Correct.

Q.      And you don't have any idea whether she received overtime or not?

A.      Correct.

***

Q.      Now, earlier you testified that you don't know if Blanca Garcia was paid overtime or not?

A.      Right.

Deposition of Carlos Alvarado ("Alvarado Dep."), attached as Exhibit 2, 111:9-18, 124:4-6.

Similarly, although Alvarado's sworn declaration asserts that Shawna Stephens was a paralegal

who was denied overtime, in his deposition he testified as follows:

> Q.    So you don't know if she was admin or a paralegal?
>
> A.    No.
>
> Q.    Do you know if she was paid hourly or salary?
>
> A.    No.
>
> Q.    Do you know if she received overtime?
>
> A.    No.  Again, I know that she would be there the extra hours in the evenings.  Not necessarily in the mornings, but in the evenings.
>
> Q.    Do you know if she was paid for those extra hours?
>
> A.    No.

*Id.* at 112:16-113:2.   Alvarado's sworn statement in his declaration that he has personal

knowledge that Garcia and Stephens are paralegals who were improperly denied overtime is

false.[1]  Indeed, neither Garcia nor Stephens were even paralegals, and both were paid hourly.

    Alvarado's misrepresentations in the declaration are not limited to the alleged identity of

other paralegals who were denied overtime.   Specifically, Alvarado's description of his job

duties in his sworn declaration to substantiate that he was misclassified as exempt is identical to

that in Davis' declaration, and the totality of the description is as follows:  "As a paralegal, I

performed clerical duties that included **typing, filing, and copying** and other general work

---

[1] Alvarado testified that as a former attorney, he understands that declarations are required to be made on personal knowledge and that he understands what personal knowledge is; however, he further admitted that his supposed personal knowledge that Stephanie Magee was denied overtime was based solely on a conversation with an attorney from another law firm who told him that Stephanie Magee told her that she was not paid overtime. Ex. 2, Alvarado Dep. 119:1-23, 120:21-121:6.  This second-hand account is certainly not personal knowledge, and Alvarado knows as much as a former attorney.  While not the basis for sanctions because it's simply a statement not based on personal knowledge, this represents yet another attempt by Alvarado to obfuscate the facts in this case to obtain a procedural advantage in the form of conditional certification.

associated with the representation of the firm's clients."  Ex. 1, ¶ 2 (emphasis added).  However,

during his deposition Alvarado was questioned about whether he did copying, typing, or filing,

and he testified as follows:

> Q.    All right.  And then there were various departments that provide support to the
>        dockets.  For instance, there was a mail room, correct?
>
> A.    Yes.
>
> Q.    And they handled all the mail?
>
> A.    Yes.
>
> Q.    And they also handled copy services, is that right?
>
> A.    Yes.
>
> ***
>
> Q.    Okay.  [You] didn't send out mail?
>
> A.    No.
>
> Q.    Didn't do the filing?
>
> A.    That's correct.  Just to clarify, on the mail we would draft the letters and then give
>        them to the mail department, who would actually get it out the door.
>
> Q.    Right.  But, I mean, you didn't put envelopes in it and run it through the machine,
>        that sort of thing?
>
> A.    That's correct.
>
> Q.    Okay.  Didn't make copy services; had a department for that?
>
> A.    That's correct.
>
> ***
>
> Q.    You didn't type out the dictation?
>
> A.    No.
>
> Q.    You didn't type dictation from any lawyers?

A.    No.

Q.    And on the filing you mentioned – we discussed earlier that there was a file room and so the file clerks took care of filing?

A.    Yes.  I mean, occasionally I would put away a file that I pulled and I'd put it away myself.

Q.    Right.  And there was a copying – the mail room also did copying services?

A.    Yes.

Q.    Now, I assume occasionally you would print something out or make a copy that you needed?

A.    That's correct.

Q.    But it wasn't really part of your official job duties to make copies or anything like that?

A.    That's right.

***

Q.    Typing, other than typing yourself at your computer –

A.    That's right.

Q.    -- your own documents, it wasn't something that you did day in and day out.

A.    No.  I was not a typist.

Ex. 2, Alvarado Dep. 39:13-21, 60:23-61:10, 110:4-21, 122:5-10.  Alvarado's sworn assertion in his declaration that his job duties were to copy, file, and type conflicts with his sworn deposition testimony.[2]

---

[2] In fact, Alvarado's description of his job duties at his deposition encompassed several pages of testimony, but never mentions copying, filing, or typing as his primary job duties.  Ex. 2, Alvarado Dep. 45:13-51:11, 60:13-22.  Also, while Alvarado's declaration asserts that his job duties were typical of other paralegals and he specifically references Stephanie Magee as a paralegal who was denied overtime, at his deposition he testified that "she did something different" than Alvarado and "her job duties were different than what [he] did."  Ex. 1, ¶¶ 2, 6;  Ex. 2, Alvarado Dep. 117:8-12.

## V.      ARGUMENT AND AUTHORITIES

**A.      Courts enjoy inherent authority to sanction litigants, and the striking of pleadings is appropriate when litigants abuse the judicial process by manufacturing evidence**

Courts enjoy broad discretion to exercise their inherent authority to sanction litigants by fashioning appropriate remedies for "abuse of the judicial process." *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123, 2134 (1991); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 957-58 (9th Cir. 2006); *F.D.I.C. v. Hurwitz*, 384 F. Supp. 2d 1039, 1108 (S.D. Tex. 2005).  This "inherent authority" allows courts to punish parties for engaging in fraudulent litigation conduct, including the manufacturing of evidence and offering perjured testimony.  *Pressey v. Patterson*, 898 F.2d 1018, 1023-24 (5th Cir. 1990).  The inherent power to address such fraud is "necessary to the integrity of the courts, for 'tampering with the administration of justice in this manner . . . involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public.'" *Chambers,* 111 S. Ct. at 2132.

While courts should exercise restraint when fashioning an appropriate sanction and the striking of pleadings is a particularly harsh result, "where a party manufactures evidence which purports to corroborate its substantive claims," such conduct uniquely calls for dismissal on its first occurrence.  *Vargas v. Peltz,* 901 F. Supp. 1572, 1581 (S.D. Fla. 1995) (dismissing suit where plaintiff in sexual harassment lawsuit fabricated evidence);  *Brown v. Oil States Skagit Smatco,* No. 10-31257, 2011 WL 6032969, at * 5-8 (5th Cir. Dec. 6, 2011) (upholding the striking of the plaintiff's complaint in employment law case where he lied during his deposition regarding substantive allegations);  *Martin v. DaimlerChrysler Corp.,* 251 F.3d 691, 695 (8th Cir. 2001) (affirming dismissal with prejudice where plaintiff "gave perjurious answers during her deposition and in her interrogatory responses" and the district court "found that dismissal was the only sanction that would effectively punish [plaintiff] ... and protect the integrity of the

proceeding"); Unpublished Cases attached as Exhibit 3.  This is true because "[i]t is difficult to contemplate a clearer or more abhorrent example of a litigant's attempt to abuse and subvert the integrity of the judicial process than an effort to suborn perjury from a material witness. Coercing or seeking to obtain or manufacture false testimony strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding . . . . Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts." *Lee v. Sass,* 2006 U.S. Dist. LEXIS 21806, 2006 WL 799176, at *1 (E.D. Mich. Mar. 29, 2006). Moreover, "the imposition of monetary sanctions alone would suggest that money could cure litigation misconduct even of the magnitude found here, including witness tampering and suborning perjury." *Young,* 217 F.R.D. at 70.

Litigation is not a game in which one party challenges the other to catch him in lies, and unless the harshest sanctions are imposed "[l]itigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means." *Vargas,* 901 F. Supp. at 1582.  Indeed, the Fifth Circuit has repeatedly found that when a party perjurers himself, the striking of his pleadings is warranted because violating one's oath to testify truthfully represents contumacious conduct of the worst kind. *Brown v. Oil States Skagit Smatco,* No. 10-31257, 2011 WL 6032969, at * 5-8 (5th Cir. Dec. 6, 2011) (upholding the striking of the plaintiff's complaint in employment law case where the plaintiff gave conflicting reasons for his termination in different depositions).

**B.**   **Alvarado's declaration contains false statements regarding matters of substance and dismissal of his claim is the appropriate sanction**

In this case, Alvarado testified at his deposition that he knew his declaration was made under oath, he understood the penalties of perjury, and he swore to tell the truth; indeed, as a

former officer of the court, Alvarado was uniquely aware of these obligations. Ex. 2, Alvarado Dep. 120:21-121:6, 126:15-25. His declaration then asserts that Blanca Garcia and Shawna Stephens were paralegals who "worked in excess of 40 hours per week and, like me, were not paid overtime for those hours." Ex. 1, ¶ 6. However, in his deposition he gave conflicting testimony in which he admitted that he has no idea whether they were paid overtime or not, or whether Stephens is even a paralegal, testifying as follows:

> Q.   And you don't have any idea whether she [Blanca Garcia] received overtime or not?
>
> A.   Correct.
>
> ***
>
> Q.   Now, earlier you testified that you don't know if Blanca Garcia was paid overtime or not?
>
> A.   Right.
>
> ***
>
> Q.   So you don't know if she [Shawna Stephens] was admin or a paralegal?
>
> A.   No.
>
> Q.   Do you know if she received overtime?
>
> A.   No. Again, I know that she would be there the extra hours in the evenings. Not necessarily in the mornings, but in the evenings.
>
> Q.   Do you know if she was paid for those extra hours?
>
> A.   No.

Ex. 2, Alvarado Dep. 111:9-18, 112:16-113:2, 124:4-6. This blatantly contradictory testimony confirms that Alvarado filed a declaration containing false statements regarding whether Garcia and Stephens were paid overtime, or whether Stephens was a paralegal. Further, his assertion in the declaration was on a matter of significance – to prove that other aggrieved individuals exist

to substantiate his required burden for conditional certification of a collective action.   And indeed, neither Stephens nor Garcia were paralegals, and both were paid hourly.

Alvarado's falsities did not end with the identity of other allegedly aggrieved individuals. He went on to misrepresent his job duties in an effort to prove that he was misclassified, stating in his declaration that his job duties, and those of other paralegals, were "copying, filing, and typing." Ex. 1, ¶ 2.  Conversely, at his deposition, Alvarado testified that his job duties were not to copy, file, and type, stating as follows:

Q.   And they [the mail department] also handled copy services, is that right?

A.   Yes.

\*\*\*

Q.   Didn't do the filing?

A.   That's correct.  Just to clarify, on the mail we would draft the letters and then give them to the mail department, who would actually get it out the door.

Q.   Right.  But, I mean, you didn't put envelopes in it and run it through the machine, that sort of thing?

A.   That's correct.

Q.   Okay.  Didn't make copy services; had a department for that?

A.   That's correct.

\*\*\*

Q.   You didn't type out the dictation?

A.   No.

Q.   You didn't type dictation from any lawyers?

A.   No.

Q.   And on the filing you mentioned – we discussed earlier that there was a file room and so the file clerks took care of filing?

A.     Yes.  I mean, occasionally I would put away a file that I pulled and I'd put it away myself.

Q.     Right.  And there was a copying – the mail room also did copying services?

A.     Yes.

***

Q.     Typing, other than typing yourself at your computer –

A.     That's right.

Q.     -- your own documents, it wasn't something that you did day in and day out.

A.     No.  I was not a typist.

Ex. 2, Alvarado Dep. 39:13:21, 60:23-61:10, 110:4-21, 122:5-10.  Alvarado's sworn assertion in his declaration that his job duties were to copy, file, and type is untrue.

The facts here are on point with those recently addressed by the Fifth Circuit in *Brown v. Oil States Skagit Smatco.*  No. 10-31257, 2011 WL 6032969, at * 5-8 (5th Cir. Dec. 6, 2011).  In *Brown,* the plaintiff brought suit against an insurance carrier for injuries sustained in a car accident, and at his deposition testified that he was forced to resign from his employment due to personal injuries sustained in the car accident.  *Id.* at * 1.  Several months later, he brought suit against his former employer for harassment and constructive discharge, and testified at his deposition in that case that he was forced to resign because of racial harassment.  *Id.*  In affirming the district court's dismissal of the plaintiff's employment claim because of the contradictory testimony regarding his reason for resignation, the Fifth Circuit noted that the plaintiff "took an oath to tell the truth . . . [and] this is not a trivial oath."  *Id.* at * 5.  Because the plaintiff "committed perjury, a serious offense that constitutes a severe affront to the courts and thwarts the administration of justice," dismissal of the plaintiff's claims was a necessary sanction.

*Id.* at * 7;  *see also Vargas,* 901 F. Supp. at 1581 (dismissing suit where plaintiff in sexual harassment lawsuit fabricated evidence);  *Martin,* 251 F.3d at 695 (affirming dismissal with prejudice where plaintiff "gave perjurious answers during her deposition and in her interrogatory responses" and the district court "found that dismissal was the only sanction that would effectively punish [plaintiff] . . . and protect the integrity of the proceeding").

Like the plaintiff in *Brown*, Alvarado has made contradictory statements under oath regarding matters of significance to this case, including his job duties to substantiate that he was misclassified and the existence of others who were allegedly unlawfully denied overtime to justify certifying a class action.  Had Alvarado's deceit not been exposed through a deposition – a deposition that Plaintiffs claimed was unnecessary because Alvarado's false declaration was sufficient to certify a collective action – a collective action could have been certified, thereby forcing Defendant to incur untold costs.  As the Supreme Court has explained, this type of dishonesty is an affront to the administration of justice as a whole and demands the harshest repercussions to deter such conduct in the future.  *Chambers,* 111 S. Ct. at 2132.  Accordingly, the striking of Alvarado's pleadings is an appropriate exercise of the Court's inherent authority, and the least severe sanction appropriate in light of the contumacious conduct at issue.  *Brown,* No. 10-31257, 2011 WL 6032969, at * 5-8.  In addition, Defendant is entitled to recover its fees in defending against this fraudulent conduct.  *Howard v. State Farm Lloyds,* No. H-04-0352, 2005 WL 2600442, at * 9-10 (S.D. Tex. Oct. 13, 2005) (awarding party over $80,000 in fees as sanction for opposing party submitting perjured testimony).

Further, Alvarado's declaration is virtually identical to that offered by Davis.  Exs. 1; Davis Declaration, attached as Exhibit 4.  By way of example only, each contain the following

- 13-

identical paragraph regarding their alleged job duties (a critical factor in the conditional certification analysis):

> I am a former employee of THE MOSTYN LAW FIRM ("Defendant"). Defendant is a law firm. I was employed by Defendant as a paralegal. As a paralegal, I performed clerical duties that included typing, filing, and copying and other general work associated with the representation of the firm's clients. My duties were typical of those performed by my paralegal colleagues at the firm.

Ex. 1, ¶ 2; Ex. 4, ¶ 2. The similarities, which do not end there, indicate that the declarations were likely drafted by their common counsel, and begs the question of who came up with the substantive facts in the nearly identical declarations. Because the declarations are virtually identical and we know that Alvarado's declaration is riddled with falsities, good cause exists to depose Davis as well as counsel for Plaintiffs to determine the root of the fraud and whether others are complicit. Alternatively, the Court should conduct a show cause hearing to ascertain the origin of the falsities in Alvarado's declaration.[3]

## VI.    CONCLUSION

Based on the foregoing, Defendant requests that Plaintiff Carlos Alvarado's claim be dismissed with prejudice and Defendant be awarded its cost in defending against his claim, that Defendant be granted the opportunity to depose Plaintiff Sherri Davis and counsel for Plaintiffs regarding the false statements in Alvarado's declaration, and that Defendant be granted all additional relief to which it is entitled.

Respectfully submitted,

*/s/ Will Stukenberg*
William R. Stukenberg
Attorney-in-Charge
State Bar No. 24051397

---

[3] In addition to the reasons discussed in Defendant's Response to Plaintiffs' Motion for Conditional Certification, the declarations lack of credibility further demonstrates that conditional certification of any class is improper.

- 14-

Federal I.D. No. 55792
wstukenberg@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

Of Counsel:

Peter J. Stuhldreher
State Bar No. 24056393
Federal I.D. No. 699821
pstuhldreher@meyerwhite.com
MEYER WHITE LLP
600 Travis, Suite 900
Houston, Texas 77002
Telephone:  713.951.1400
Facsimile:  713.951.1499

ATTORNEYS FOR DEFENDANT
THE MOSTYN LAW FIRM, P.C.


## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1 and this Court's Procedures, the undersigned counsel hereby certifies that, on January 11, 2012, counsel for Defendant, Will Stukenberg, conferred with counsel for Plaintiffs, Alex Mabry, in an effort to reach agreement regarding the issues raised in this motion, and Plaintiffs are opposed to the relief requested herein.

*/s/ Will Stukenberg*
Will Stukenberg


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the below counsel of record via CM/ECF, on this 11th day of January, 2012.

Alex Mabry
The Mabry Law Firm, PLLC
711 West Alabama Street
Houston, Texas  77006-5005

- 15-

_/s/ Will Stukenberg_
Will Stukenberg